UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. SULLIVAN,            )
        Petitioner,             )
                                )
            v.                  )       C.A. No. 96-12046-MLW
                                )
RONALD T. DUVAL,                )
        Respondent.             )

MEMORANDUM AND ORDER

WOLF, D.J.                                      March 24, 2014

I.  SUMMARY

On March 24, 1987, petitioner Michael J. Sullivan was
convicted of first-degree murder and armed robbery in Middlesex
Superior Court and sentenced to concurrent life sentences. The jury
was presented with evidence that allowed it to find that Sullivan
had attacked and beaten the victim, Wilfred McGrath, then left him
to die behind an abandoned grocery store after stealing his money,
jewelry, and drugs.

After the Massachusetts Supreme Judicial Court ("SJC") upheld
Sullivan's conviction on direct appeal and declined to hear his
collateral appeal from the trial judge's denial of his motion for
a new trial, Sullivan filed a §2254 petition with this court,
raising three grounds for relief: (1) ineffective assistance of
counsel; (2) violation of his Sixth Amendment right of
confrontation; and (3) violation of due process rights stemming
from the Commonwealth's failure to promptly disclose errors in
pretrial discovery to Sullivan.

As to the ineffective-assistance claim, Sullivan alleges that

his trial counsel failed to object to the introduction of evidence concerning a plea bargain struck by the Commonwealth's main witness.

As to the Confrontation Clause claim, Sullivan argues that the introduction of evidence about an out-of-court statement made by his sister was improper because he had no opportunity to cross-examine her. He also argues that this error was compounded by a jury instruction implying that her statement could be used as evidence of his consciousness of guilt.

Finally, Sullivan argues that the Commonwealth, by failing to disclose in a timely manner two errors in pretrial discovery until defense counsel had relied upon incorrect information during opening statements, prejudiced his defense in violation of constitutional due process.

This court first examined this matter over a decade ago. Although this court denied two of Sullivan's claims on the merits, it also determined that Sullivan's Confrontation Clause claim was unexhausted, and the petition was stayed in its entirety until that claim had been exhausted. Now that Sullivan has returned to state court and exhausted his remedies there, the stay has been lifted and the petition is ready for a final decision. For the reasons stated below, all three of Sullivan's claims must be rejected, and the petition is, therefore, being denied.

II.  FACTS

    A.  <u>Original State Court Proceedings</u>

        1.  <u>Trial and Conviction</u>

Following a three-week jury trial in Middlesex Superior Court before Judge J. Harold Flannery, Sullivan was convicted of first-degree murder and armed robbery on March 24, 1987 and was sentenced to concurrent life sentences. Pet. at 1.

In its direct appellate review of Sullivan's conviction, the SJC summarized the evidence presented at trial:

> At trial, the Commonwealth presented evidence, chiefly through the testimony of Gary Grace, from which the jury could find the following facts. In the early hours of March 7, 1986, the victim, Wilfred McGrath, accompanied the defendant's sister, Kathy Ann Sullivan, to the Somerville apartment which Kathy, at that time, shared with the defendant. McGrath apparently was in possession of a large amount of cash and several grams of cocaine. The defendant and the victim left the apartment, and arrived at Gary Grace's apartment in the company of two other men, Emil Petrla and Steve Angio around 7:30 a.m.
>
> While Grace was washing up in the bathroom and the victim was seated at the kitchen table, the defendant approached Grace and stated that they were planning to rob the victim. Grace told the defendant not to do so in his apartment. Despite this request, Emil Petrla struck the victim from behind with enough force to knock him to the ground. The defendant[] then began to kick the victim. The defendant persisted in stomping on the victim's head and body. The defendant threatened Grace with a knife when Grace attempted to stop the beating.
>
> The defendant, Petrla, and Angio then stole money, jewelry and cocaine from the victim. Thereafter, Grace, Petrla, Angio and the defendant deposited the body behind an abandoned grocery store, where it was discovered late that night. The medical examiner testified that the victim had lived approximately one hour after being left behind the store. The cause of death was severe trauma to

the brain caused by blows with a blunt object, along with
extensive blood loss.

Emil Petrla testified for the defense. His version of the
evening's events diverged sharply from that of Grace.
Petrla testified that he and Grace were alone in Grace's
apartment with the victim. The victim supplied Grace with
some cocaine, which Grace used. Petrla testified that
Grace then claimed that the cocaine had been poor quality
and started to fight with the victim. When the victim
began to overpower Grace, Petrla stepped into the fray,
knocking the victim to the ground and kicking him a few
times. Grace, enraged, then began to stomp and kick the
victim. When Grace was finally pulled away by Petrla, the
victim looked dead. Petrla and Grace hid the body where
it was later found.

The jury convicted the defendant of both armed robbery
and murder in the first degree.

Commonwealth v. Sullivan, 574 N.E.2d 966, 968 (Mass. 1991).[1] Beyond

the evidence presented regarding the crime itself, the trial

involved several other events relevant to this petition.

a.    Inaccuracies During Opening Statements

During opening statements, Sullivan's counsel told the jury

that a chemist's report, provided by the Commonwealth, indicated

that none of the clothing seized during a search of Sullivan's

apartment had any traces of blood. See id. at 971-72. However, this

report was inaccurate: the chemist's report actually described

clothes seized from another, unrelated apartment. The Commonwealth

realized this mistake a week before trial, but the discovery was

---

[1] Sullivan has not challenged the SJC's factual account of
the trial proceedings, and in the habeas corpus context, "a
determination of a factual issue made by a State court shall be
presumed to be correct." 28 U.S.C. §2254(e)(1).

4

not reported to defense counsel until after opening statements. <u>See</u> <u>id.</u> at 972. Sullivan moved for a mistrial, "claiming that he would be unable to deliver on his promise made during opening statements." <u>Id.</u> The judge denied the motion, but told the jury that defense counsel "was mistaken because of an informational error in a police report provided to him by the Commonwealth" and instructed them to disregard that portion of the opening statement. <u>Id.</u>; <u>accord</u> Tr. II at 89.

Defense counsel also told the jury during opening statements about the opinion of the medical examiner, Dr. Ronald Suarez, that the victim's body had not been out in the cold for more than a few hours before being discovered, which would have supported the defendant's account. <u>See</u> <u>Sullivan</u>, 574 N.E.2d at 972. Defense counsel based this assertion on an investigating officer's affidavit and grand jury testimony, in which the officer relayed Dr. Suarez's opinion. However, Dr. Suarez had changed his opinion prior to trial. Sullivan argued that he had not been aware of this change and moved for a mistrial, but the judge denied the motion. <u>See</u> <u>id.</u>

### b. <u>Grace's Testimony and Plea Bargain</u>

Grace, the prosecution's main witness, had been indicted with Sullivan for murder and armed robbery. However, he entered into a plea agreement to provide full testimony in exchange for the lesser charge of being an accessory after the fact and a government

sentencing recommendation of six to seven years in prison. <u>See</u> <u>id.</u>

Evidence of this plea bargain was introduced at Sullivan's trial. Included in this evidence was a provision in the agreement that if, "at the conclusion of the co-defendants' trials, the Commonwealth feels that [Grace] has not truthfully cooperated," then the bargain would be nullified. <u>Id.</u> at 968-69 (internal quotation marks omitted). The plea agreement evidence also included a signed statement by Grace's attorney, who certified that "he had reviewed the agreement with Grace and that he was of opinion that Grace understood the agreement and had entered into it voluntarily." <u>Id.</u> at 969. During trial, Sullivan did not object to the introduction of any evidence concerning the plea agreement. <u>See</u> <u>id.</u>

### c. <u>Kathy Ann Sullivan's Statement</u>

Grace testified at trial that Sullivan had instructed his sister, Kathy Ann Sullivan, "that if anyone asked about the victim, to simply say that he left Kathy's apartment in a taxicab." <u>Id.</u> at 970; <u>see</u> Tr. VI at 110. Kathy had invoked a privilege not to testify at trial and the court did not order her to testify. However, over Sullivan's objections on hearsay and confrontation grounds, the judge permitted an investigating officer to testify that Kathy told him that the victim had left in a taxi, corroborating Grace's testimony. The officer also testified that a search of taxi company receipts from that night did not reveal any

fares that supported Kathy's statement. See id.

One of the jury instructions explained the kinds of evidence that might be used to establish Sullivan's consciousness of guilt:

> Let me say next that if you find that the Defendant made an attempt to cover up the commission of a crime . . . these are matters which you may consider on the question of consciousness of guilt . . . . You may but need not consider such evidence tending to prove the guilt of the Defendant, provided of course, that you find evidence that such conduct took place . . . .

Tr. VIII at 150. Sullivan objected to this instruction at trial. Tr. VIII at 168-69.

### 2. Direct Appeal to the SJC

On direct appeal to the SJC, Sullivan advanced seven claims: (1) "that he was unfairly prejudiced by the introduction in evidence of a plea agreement between the Commonwealth and . . . Grace," Sullivan, 574 N.E.2d at 968; (2) that he had been deprived of his Sixth Amendment right to confront his sister, whose out-of-court statement had been introduced through the police officer's testimony, see id. at 969; (3) that the trial court had erred in allowing the Commonwealth to introduce a handwritten statement by Grace, see id. at 970; (4) that the trial court "erred by failing to inform defense counsel prior to closing arguments" of jury instructions concerning Petrla's credibility, id. at 971; (5) that he had been deprived of due process of law because the Commonwealth failed to alert defense counsel to the error in the chemist's report and the change of Dr. Suarez's opinion, see id.; (6) that he

had been deprived of due process of law because the Commonwealth, in impeaching a defense witness, had "knowingly introduced false evidence," id. at 973; and (7) that the trial judge erred by admitting certain photographs into evidence, see id. The first, second, and fifth claims corresponded, in whole or in part, to the three claims that Sullivan has raised in the instant §2254 petition.

In its appellate review under Massachusetts General Laws chapter 278, §33E, the SJC "reviewed the entire record" and rejected Sullivan's arguments, "find[ing] nothing which would compel us to exercise our discretion either to reduce the verdict or to grant a new trial." Id. at 974. It examined each of the claims, including the three tied to Sullivan's instant §2254 petition, in detail.

a.   Grace's Plea Bargain

Because Sullivan had not objected at trial to the evidence concerning Grace's plea bargain, the SJC "review[ed] this claim only to determine whether there [was] a substantial likelihood of a miscarriage of justice due to any error the trial court may have made." Id. at 969 (citing Commonwealth v. Rosado, 562 N.E.2d 790, 792-93 (Mass. 1990)). In rejecting Sullivan's claim, the SJC compared this case to Commonwealth v. Ciampa, 547 N.E.2d 314 (Mass. 1989), a decision that postdated Sullivan's trial and in which the SJC had concluded that the admission of certain evidence concerning

a witness's plea agreement had necessitated a new trial.

The court in <u>Sullivan</u> noted several distinctions between the claims made by Sullivan and those in <u>Ciampa</u>. First, the standard of review was more relaxed in <u>Ciampa</u> because objections had been made and overruled at trial. <u>Sullivan</u>, 574 N.E.2d at 969. Second, the <u>Ciampa</u> plea agreement included an explicit statement that the bargain was "contingent upon the truth of the witness's assertion that he did not shoot the victim," <u>id.</u>, which "could be interpreted by the jury as 'asserting the Commonwealth's reasoned conclusion that [the witness's representation was correct].'" <u>Id.</u> (alteration in original) (quoting <u>Ciampa</u>, 547 N.E.2d at 318). Finally, the agreement in <u>Ciampa</u> referred to placement in a witness protection program, which was "held improper because it implied that the government believed that the witness had something to fear from the defendants," <u>id.</u> (citing <u>Ciampa</u>, 547 N.E.2d at 318).

Considering these differences to be material, the SJC rejected the request for a new trial on these grounds, finding no "substantial likelihood of a miscarriage of justice." <u>Id.</u> at 969. It did, however, note that had defense counsel objected at trial, the trial judge should have redacted the signed statement made by Grace's attorney and should have minimized the number of admissible references to the provision that made the plea bargain contingent upon Grace's truthfulness. <u>See</u> <u>id.</u>

b. <u>Kathy Ann Sullivan's Statement</u>

With respect to the officer's testimony about Kathy's statement, the SJC first found that because her statement was introduced "not for its truth, but rather to show that the statement was made," it was not hearsay. <u>Id.</u> at 970. With regard to the Confrontation Clause claim, the SJC found that:

> For the same reason, Kathy Ann Sullivan was not a witness against her brother and he had no constitutional right to subject her to cross-examination. The officer who testified was fully competent to testify as to whether Kathy Sullivan ever uttered the statement at issue. He was available for and subject to cross-examination. There was no error in allowing the officer to testify concerning the statement. <u>See</u> <u>Anderson v. United States</u>, 417 U.S. 211, 219-20 (1974) (where statement is admitted merely to show that it was made, opportunity to cross-examine declarant is not required).

<u>Sullivan</u>, 574 N.E.2d at 970. Accordingly, the SJC affirmed the trial judge's ruling.

c. <u>Inaccuracies During Opening Statements</u>

With respect to Sullivan's claim that the belated disclosures about the chemistry report and Dr. Suarez's changing opinion constituted a violation of due process under both the federal constitution and the Massachusetts Declaration of Rights, the SJC "looked to the consequences of the delay," <u>id.</u> at 971, and concluded that the judge did not err in denying Sullivan's mistrial motions.

For the chemist's report, the SJC noted that the trial judge had explained the mistake to the jury and "plac[ed] the blame for

the mistake squarely on the Commonwealth," thus "remov[ing] any adverse inference which could have been drawn against the defense for a failure to live up to promises made in the opening statement." <u>Id.</u> at 972. Although the SJC acknowledged that the trial judge did not clarify exactly what about defense counsel's statement was inaccurate, it found that later trial testimony eliminated any "real danger of juror confusion on that point." <u>Id.</u> Accordingly, the SJC found that there had been no error.

Regarding the medical examiner's opinion, the SJC concluded that the Commonwealth had done nothing improper. Rather, the cause of the delay was the defense counsel's apparent ignorance of Dr. Suarez's own grand jury testimony in April 1986, when he made statements inconsistent with any conclusion that the victim had been left outside for only a few hours. This testimony, the SJC concluded, indicated that Dr. Suarez had changed his mind, and the testimony had been available to the defendant. Therefore, "[t]hat the defense counsel chose to rely on the secondhand statements of the police officer rather than the direct testimony of Dr. Suarez does not entitle the defendant to a mistrial. The defense's misstatement in the opening was not the result of any delayed disclosure on the part of the Commonwealth." <u>Id.</u> at 972-73.

### 3.  <u>First Motion for a New Trial</u>

Following the SJC's affirmance of his conviction, Sullivan filed a motion for post conviction relief ("First Motion for a New

Trial") on October 14, 1993 in Middlesex Superior Court. See
Commonwealth v. Sullivan Docket at 19 (App'x to Memo. in Supp. of
Pet. Ex. 2). Specifically, Sullivan argued that his trial counsel
had been ineffective for failing to object to the introduction of
evidence concerning Grace's plea agreement, violating his rights
under both the Massachusetts and federal constitutions. See Memo.
in Supp. of Mot. for Post Conviction Relief at 3 (App'x to Memo. in
Supp. of Pet. Ex. 7).

Although Sullivan acknowledged that, on direct appeal, the SJC
had rejected his challenge to the admissibility of the plea
agreement, "[t]he lack of an objection [at trial] limited the
court's review to whether the error created a substantial
likelihood of a miscarriage of justice, and thereby created an
insurmountable hurdle for the defendant." Id. at 4 (citation
omitted). Sullivan argued that defense counsel should have objected
to the admission of the plea agreement and that trial counsel had
no tactical reason for failing to object. See id. at 5-7. In
support of this argument, Sullivan noted that the SJC had itself
implied that his defense counsel should have objected at trial. See
id. at 5.

On November 15, 1994, Judge Flannery denied the motion for
post-conviction relief, writing that "[a] misstep or omission that
does not cause a substantial likelihood of a miscarriage of justice
is not, in the these circumstances, ineffective assistance of

counsel." App'x to Memo. in Supp. of Pet. Ex. 11 (citing Commonwealth v. Gagliardi, 638 N.E.2d 20 (1994)).

Sullivan then sought leave to appeal the denial of the motion before the full SJC, again arguing that his trial counsel's failure to object constituted ineffective assistance. Justice Joseph R. Nolan, reviewing the case under Massachusetts General Laws chapter 278, §33E, denied Sullivan's application without explanation. Mar. 22, 1995 Order Denying Leave to Appeal (App'x to Memo. in Supp. of Pet. Ex. 13).

B.   Habeas Proceedings Before This Court

Sullivan filed the instant §2254 Petition on October 10, 1996. See Pet. As explained earlier, his petition raises three grounds for relief: (1) ineffective assistance of counsel; (2) violation of his Sixth Amendment right of confrontation; and (3) violation of due process rights based on the Commonwealth's failure to disclose errors in pretrial discovery. See id. at 5-6.

First, Sullivan argues that his trial was tainted by unconstitutionally ineffective assistance of his trial counsel, who "failed to object to the admission of a plea agreement between the Commonwealth and its chief witness," Gary Grace. Id. at 5. Repeating arguments made on direct and collateral appeal in state court, Sullivan asserts that evidence of the agreement allowed the jury to infer that the Commonwealth and the witness's attorney had vouched for the witness's credibility. Sullivan notes that his

counsel's failure to object during trial made the standard of review on direct appeal more stringent, and argues that "the trial counsel's failure to object appears to have been the deciding factor in the rejection of the petitioner's claim." Memo. in Supp. of Pet. at 8.

Second, Sullivan argues that the trial judge erred by permitting the Commonwealth to introduce Kathy Ann Sullivan's statement through the testimony of the police officer and by instructing the jury that they could consider that statement as evidence of Sullivan's consciousness of guilt. The petition states that "[a]dmission of this statement, and an instruction that it could be considered as an implied admission by the petitioner, violated his Sixth Amendment confrontation rights." Pet. at 5.

Third, Sullivan argues that his due process rights were violated at trial by the Commonwealth's failure to disclose errors in pretrial discovery concerning the chemist's report and the medical examiner's opinion, leading defense counsel to make an inaccurate assertions during his opening statement about expected trial testimony. Id. at 6.

After concluding that it was not "plainly app[arent] from the face of the petition . . . that the petitioner is not entitled to relief," the court ordered the Commonwealth to respond to the petition. July 11, 1997 Order (alteration in original) (quoting Rules Governing Section 2254 Cases, Rule 4) (internal quotation

marks omitted). After the completion of briefing, the court referred the petition to Magistrate Judge Joyce L. Alexander for a report and recommendation. <u>See</u> June 1, 2000 Order.

### 1. <u>Magistrate Judge's Report and Recommendation</u>

On September 5, 2000, Magistrate Judge Alexander issued her Report and Recommendations, concluding that the petition should be denied. Magistrate Judge Alexander's analysis was conducted under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), framework for habeas review.[2]

#### a. <u>Ground One: Ineffective Assistance of Counsel</u>

For ground one, the Sixth Amendment claim of ineffective assistance of counsel with respect to the admission of evidence concerning the plea bargain, Magistrate Judge Alexander first rejected the respondent's argument that this claim was procedurally defaulted under §33E, concluding because Justice Nolan did not articulate his reasons for denying Sullivan's §33E petition, the court could not conclude that it was based on an independent and adequate state-law grounds. <u>See</u> Report and Recommendation at 8 (citing <u>Harris v. Reed</u>, 489 U.S. 255 (1989); <u>Little v. Murphy</u>, No. C.A. 95-10889-RGS, 1998 WL 704415 (D. Mass. May 21, 1998)).

With regard to the merits of the claim, the magistrate judge applied the constitutional test articulated in <u>Strickland v.</u>

---

[2] See section III.A.1, <u>infra</u>, for a discussion of the standard of review under the AEDPA.

<u>Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court held that defense counsel's performance is unconstitutionally ineffective only when (1) the attorney's performance falls below an objective standard of reasonableness, and (2) the deficiency results in prejudice to the defendant, <u>id.</u> at 687.

With respect to the deficiency of performance, the magistrate judge concluded that at the time of the trial, because "no case in the Commonwealth held that the admission of a plea agreement of the type at issue here was reversible error," trial counsel's failure to object to the admission of statements in the plea agreement about Grace's obligation to testify truthfully was not deficient under <u>Strickland</u>. Report and Recommendation at 10. With respect to counsel's failure to object to the admission of the hearsay statement of Grace's attorney contained in the plea agreement, the magistrate judge proceeded directly to the prejudice analysis. She concluded that "[t]he petitioner has not affirmatively proven that, had counsel objected to the admission of the attorney's statement[,] a new trial would have been granted." <u>Id.</u> at 11. Accordingly, the magistrate judge recommended rejecting this claim.

b. <u>Ground Two: Right of Confrontation</u>

Next, Magistrate Judge Alexander examined Sullivan's claim that his Sixth Amendment Confrontation Clause right had been violated by the admission of the statement of his sister through the testimony of a police officer and the jury instruction relating

16

to that statement.

The magistrate judge first concluded that Kathy's statement was not hearsay because it had not been introduced for the truth of the matter asserted; instead, "[t]he statement was admitted as a way of reinforcing the testimony of Grace that the petitioner told her to make that statement, not to prove that the victim left in a taxicab." Id. at 13. Citing Supreme Court precedent suggesting that statements that are not hearsay do not present confrontation concerns, see id. (citing Dutton v. Evans, 400 U.S. 74 (1970); Anderson v. United States, 417 U.S. 211, 219 (1974)), the magistrate judge implied that the SJC's rejection of Sullivan's claim on this ground was not contrary to or an unreasonable application of the law as established by the Supreme Court, but she did not explicitly recommend denying this claim, see id.[3]

For Sullivan's argument that the trial judge erred by giving a jury instruction "regarding an implied admission by the petitioner of his consciousness of guilt," the magistrate judge noted that "nowhere in the petitioner's brief to the Supreme Judicial Court does the petitioner raise a constitutional question regarding the jury instruction." Id. at 14. Accordingly, the magistrate judge concluded that Sullivan had failed to exhaust

_____

[3] The lack of an explicit recommendation was evidently related to the magistrate judge's finding that the other component of Sullivan's second ground for relief, concerning the jury instructions, had not been exhausted and should therefore be denied.

state court remedies and that this claim should, therefore, be denied. See id.

c.    Ground Three: Due Process

Finally, Magistrate Judge Alexander turned to the due process claim regarding the Commonwealth's failure to disclose problems concerning the chemist's report and medical examiner's opinion.

For the chemist's report, the magistrate judge concluded that there was no "clearly established" rule from the Supreme Court that settled this matter, which meant that the analysis turned on whether the SJC's decision was an "objectively reasonable" application of existing Supreme Court precedent. Id. at 16 (quoting O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998) (internal quotation marks omitted); see 28 U.S.C. §2254(d)(1). The magistrate judge identified a general federal consensus for denying such due process claims when "the petitioner's defense [is not] impeded 'to a significant degree,' or [when there is not] 'substantial prejudice' placed on the defendant or the outcome of the trial." Id. at 17 (quoting United States v. Josleyn, 99 F.3d 1182, 1196 (1st Cir. 1996); United States v. Matthews, 20 F.3d 538, 550 (2d Cir. 1994)). Here, where the SJC had concluded that the trial judge's corrective instructions to the jury had sufficiently mitigated the risk of prejudice to the defendant, the magistrate judge found that the SJC's decision was "objectively reasonable" and did not generate a cognizable claim under §2254. See id. at 18.

18

With respect to the medical examiner's opinion, the magistrate judge determined that the SJC's ruling upholding the denial of Sullivan's motion for a new trial was a factual, not legal, determination, to be presumed correct under 28 U.S.C. §2254(e)(1) unless Sullivan could rebut that presumption with clear and convincing evidence. The SJC determined that because Dr. Suarez had testified about his revised opinion before trial, that information had not been withheld by the Commonwealth and was available to defense counsel. Relying on the presumption of correctness, which Sullivan had not rebutted, the magistrate judge concluded that this claim should be denied as well. See id. at 19.

### 2. Adoption of Magistrate Judge's Findings

After considering objections to the report by both Sullivan and the Commonwealth, this court adopted the magistrate judge's recommendations and dismissed the petition, though it dismissed the Confrontation Clause claims without prejudice to being refiled after exhaustion of state court remedies. See Sept. 30, 2001 Order at 2. In adopting these recommendations, the court noted that the "claim that trial counsel's failure to object to the admission of a plea agreement and one of its witnesses constituted ineffective assistance of counsel raises a challenging question of whether petitioner procedurally defaulted on that claim. This court, however, need not decide that question because the claim, for the reasons explained by the Magistrate Judge, fails on the merits."

19

<u>Id.</u> at 1.

> 3. <u>Appeal and Stay of Proceedings</u>

Sullivan received a certificate of appealability from this court with respect to the two exhausted claims and appealed the denial of the petition to the First Circuit. Before the First Circuit heard the appeal, however, Sullivan moved to stay the habeas proceedings only with respect to his Confrontation Clause claim to permit him to exhaust his state remedies. This court granted the motion to stay, noting that dismissal without prejudice would mean that even after exhaustion of state remedies, the one-year statute of limitations imposed by AEDPA would bar a refiled habeas petition. <u>See</u> Mar. 4, 2002 Order at 2 (citing 28 U.S.C. §2244(d)).

On October 8, 2002, the First Circuit ruled that "[t]he district court's adjudication of the unexhausted claims on the merits, and issuance of a stay as to the unexhausted claim only, was contrary to law." <u>Sullivan v. Duval</u>, No. 01-2583, at 2 (1st Cir. Oct. 8, 2002). The First Circuit ordered this court to "stay the petition in its entirety until the petitioner either entirely exhausts his unexhausted claim or amends his petition to remove it." <u>Id.</u> After Sullivan filed a motion for reconsideration on the ruling of exhaustion, this court entered a stay of the entire petition on December 17, 2002. Dec. 17, 2002 Order.

C.     Second Motion for a New Trial

On December 29, 2008, over six years after the stay was imposed, Sullivan filed a new motion for a new trial ("Second Motion for a New Trial") in Middlesex Superior Court. See Middlesex Superior Ct. Docket (Vol. II of Suppl. Answ. at 2).[4] Judge Diane M. Kottmyer denied the motion on July 24, 2009, noting in her brief order that the issue regarding the consciousness-of-guilt jury instructions "was raised on direct appeal," presumably making it a non-new claim.[5] Id.

Sullivan then petitioned a single justice of the SJC for leave to appeal the denial of his motion for a new trial. See Petition for Leave to Appeal Pursuant to G.L. c. 278, §33E (Vol. II of Suppl. Answ. at 5.). In his memorandum in support of his petition for leave to appeal, Sullivan advanced two arguments. First, Sullivan argued that Crawford v. Washington, 541 U.S. 36 (2004), which expanded and clarified defendants' rights under the Confrontation Clause, should be applied retroactively under the Massachusetts Declaration of Rights to his 1987 conviction. See

---

[4] The memorandum in support of that motion is not in the record, but the arguments are evidently summarized and repeated in Sullivan's petition to the single justice.

[5] Sullivan's brief on direct appeal did challenge this jury instruction, see Brief for the Defendant at 49 (Suppl. Answ. Ex. 1), but as Magistrate Judge Alexander noted, his arguments concerning the instruction did not explicitly invoke the protections of the federal constitution, see Report and Recommendation at 14.

Memo. in Supp. of Pet. for Leave to Appeal at 6 (Vol. II of Suppl. Answ. at 18.).

Second, Sullivan argued that the trial court had violated his Sixth and Fourteenth Amendment rights by instructing the jurors that they could consider Kathy Ann Sullivan's statement as an implied admission by the defendant of his consciousness of guilt. See id. Sullivan argued that the instruction "created a substantial risk that the jury would find the defendant guilty for the crime charged based on his consciousness of guilt, which it could infer from a statement that he did not make and could not impeach." Id. at 22-23. Accordingly, he argued that "[a] jury instruction that permits the jurors to infer guilt from the statements of a third party where he is not given an opportunity to show that the statement was not made or was otherwise inaccurate deprives the defendant of his right to confrontation under the Sixth and Fourteenth Amendments." Id. at 23. Finally, he argued that, "should this court conclude that counsel failed to preserve and present this issue," the court should find that such a failure represented unconstitutionally ineffective assistance of counsel. See id.

The Commonwealth opposed Sullivan's petition for leave to appeal, noting that under §33E, he had failed to present any "new and substantial" issues in his petition. See Commonwealth's Memo. of Law in Opp. to Def.'s Pet at 17 (Vol. II of Suppl. Answ. at 113). The Commonwealth argued that Crawford should not be applied

retroactively in state court, and that even if it were, Kathy Ann Sullivan's statements would not run afoul of the Confrontation Clause because they were not "testimonial," in the sense that they were not offered for the truth of the matter asserted. <u>See</u> <u>id.</u> at 18-19. The Commonwealth also argued that Sullivan had waived his constitutional claim concerning the jury instruction by not raising it on direct appeal, <u>see</u> <u>id.</u> at 27, and that on the merits, "[t]he judge's instruction . . . was correct and required because, even without the contested evidence, there was other evidence at trial that warranted the judge's general instruction," <u>id.</u> at 28. Finally, the Commonwealth argued that there was no merit to Sullivan's claim that ineffective assistance of counsel excused his failure to preserve the claim regarding the jury instructions, primarily because the claim itself was meritless and because the other evidence available indicated that there was no prejudice arising from the failure to preserve the issue. <u>See</u> <u>id.</u> at 28-29.

On October 29, 2009, Justice Roderick Ireland, acting as the §33E gatekeeper justice, issued an order denying the petition "for reasons stated in the Commonwealth's opposition." Order Denying Leave to Appeal (Vol. II of Suppl. Answ. at 128).

D.   <u>Return to Federal Court</u>

On December 11, 2009, Sullivan returned to this court and, arguing that his claims had been fully exhausted in state courts, moved to vacate the stay imposed in 2002. <u>See</u> Mot. to Vacate Stay.

The court granted the motion and lifted the stay. See May 20, 2010 Order at 2. The court ordered briefing on the disposition of the petition, but noted that with respect to the ineffective assistance and due process claims, "the court does not expect to revisit its conclusions unless petitioner demonstrates newly discovered evidence or a material change in controlling law." Id. (citing Ellis v. United States, 313 F.3d 636, 646-48 (1st Cir. 2002)). However, the court also said that "the parties are free to propose and argue for alternative approaches." Id.

III. ANALYSIS

    A.   The Habeas Corpus Framework

        1.   Collateral Review of State Court Decisions

This court's review of the state court decisions is guided by the AEDPA, 110 Stat. 1214 (1996).[6]

Because this court is reviewing a collateral attack, it must presume that the state court's factual determinations are correct unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18

_____

[6] Although Sullivan's conviction became final several years before the AEDPA's enactment, his petition is not subject to the AEDPA's one-year period of limitation. The First Circuit has applied a one-year grace period for the filing of petitions challenging older convictions, see Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999). Sullivan's petition was filed on October 10, 1996, within the grace period.

(1st Cir. 2000). The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion. <u>Sanna v. DiPaolo</u>, 265 F.3d 1, 7 (1st Cir. 2001). This presumption extends to the factual determinations made by both state trial and appellate courts. <u>See</u> <u>Rashad v. Walsh</u>, 300 F.3d 27, 34 (1st Cir. 2002).

With respect to evaluating the legal determinations of state courts, the AEDPA establishes a deferential standard of review applied by a habeas court for the review of a state court judgment that is rendered "on the merits." <u>See</u> 28 U.S.C. §2254(d).[7] However, this standard does not apply to all state court judgments: a judgment on a federal claim is not rendered "on the merits" unless it is decided on federal law grounds. <u>Fortini v. Murphy</u>, 257 F.3d

_____

[7] Section 2254 states in part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d).

39, 47 (1st Cir. 2001) (citing 28 U.S.C. §2254(d)). Accordingly, any federal claims decided on purely state law grounds are subject to <u>de novo</u> review. <u>Norton v. Spencer</u>, 351 F.3d 1, 5 (1st Cir. 2003).

On review of state court legal judgments rendered on the merits of a petitioner's federal claim, the court may issue a writ of habeas corpus only if the judgment was "contrary to clearly established law as established by the Supreme Court," or where the judgment provided an "unreasonable application of Supreme Court precedent." 28 U.S.C. §2254(d)(1).[8]

A state court decision is "contrary to" clearly established law in two circumstances: (1) where "the state court applies a rule that contradicts the governing law set forth [in United States Supreme Court] cases"; or (2) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

An application is "unreasonable" "if the state court identifies the correct governing legal rule from [the Supreme]

_____

[8] Relief is also available when a decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," 28 U.S.C. §2254(d)(2), and those factual determinations are given a "presumption of correctness," <u>id.</u> §2254(e)(1). Here, no §2254(d)(2) analysis is necessary because Sullivan does not challenge the state courts' factual determinations.

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-09, 413. The fact that the state court may have reached an incorrect result is not sufficient; the result must be unreasonable. See McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Where, for example, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong is satisfied. Id. at 37.

Generally, collateral review of a state court decision is conducted in light of the Supreme Court precedent existing at the time that decision was made, without regard to rules established subsequently. See Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality opinion); Whorton v. Bockting, 549 U.S. 406, 416 (2007) ("Under the Teague framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review."); Horn v. Banks, 536 U.S. 266 (2002) (per curiam) (holding that Teague analysis is mandatory under AEDPA). Retroactive application of rules that postdate direct review is permissible "only if (1) the rule is substantive or (2) the rule is a '"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" Whorton, 549 U.S. at 416 (alteration in original) (quoting Saffle v. Parks, 494 U.S. 484, 495 (1990)).

2. <u>Procedural Default</u>

Even when a petitioner has raised a federal claim in a habeas petition, "[a] federal court will not consider a federal habeas claim 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" <u>Jewett v. Brady</u>, 634 F.3d 67, 76 (1st Cir. 2011) (quoting <u>Walker v. Martin</u>, 131 S. Ct. 1120, 1127 (2011)); <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991); <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989). A petitioner's procedural default of a federal claim in state court constitutes an independent and adequate state ground if the state regularly and consistently applies the procedural rule with which the petitioner did not comply and has not waived it by relying on some other ground. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977); <u>Jewett</u>, 634 F.3d at 76. Procedural default is a preliminary issue for a federal court to address before considering the merits of a claim. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524 (1997); <u>Lynch v. Ficco</u>, 438 F.3d 35, 47 n.10 (1st Cir. 2006) ("It is customary to address the procedural default issue on habeas first, even if that issue may be more complex than simply turning to the ultimate question, and even when the likely affirmance on the ultimate question is to uphold the state court judgment.").

However, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any

[procedural] bar to federal court review that might otherwise have been available." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>accord</u> <u>Phoenix v. Matesanz</u>, 189 F.3d 20, 25-26 (1st Cir. 1999). In addition, the bar to a federal habeas court considering a procedurally defaulted claim "may be lifted . . . if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law,'" <u>Maples v. Thomas</u>, 132 S. Ct. 912, 922 (2012) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)), or a fundamental miscarriage of justice, <u>see</u> <u>Coleman</u>, 501 U.S. at 750.

    B.  <u>Petitioner's Claims</u>

    The court concludes that none of Sullivan's claims is meritorious. Because Sullivan's previously unexhausted second claim, brought under the Confrontation Clause, was not decided by this court in earlier stages of habeas review and, therefore, requires the closest analysis, it is discussed first.

        1.  <u>Violation of Sixth Amendment Right of Confrontation</u>

    Sullivan's second stated ground for relief can be divided into two separate but related claims. The first, concerning his claim about the admission of his sister's statement, was considered and rejected by the SJC on direct appeal. The second, concerning jury instructions relevant to that statement, was not considered by a state court until Sullivan's Second Motion for a New Trial.

a.  <u>Kathy Ann Sullivan's Statement</u>

In its ruling on direct appeal, the SJC concluded that because testimony concerning Kathy Ann Sullivan's statement about the taxicab was not offered for the truth of the matter asserted, it was not hearsay and, therefore, did not violate the right of confrontation guaranteed by the Sixth Amendment. <u>See</u> <u>Sullivan</u>, 574 N.E.2d at 970.

The Supreme Court has held that its decision in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), which recognized more expansive rights for defendants under the Confrontation Clause, does not apply retroactively on habeas review. <u>See</u> <u>Whorton</u>, 549 U.S. at 421. Therefore, the SJC's decision must be evaluated in light of Supreme Court precedent at the time that decision was made. <u>See</u> <u>id.</u> at 416.

The magistrate judge correctly concluded that the SJC's 1991 decision was neither "contrary to" nor an "unreasonable application of" the law as articulated by the Supreme Court at the time of the ruling. 28 U.S.C. §2254(d)(1). In 1991, the core of Confrontation Clause jurisprudence was <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), in which the Supreme Court held that the inquiry was primarily concerned with the "reliability" of the testimony. <u>Id.</u> at 66. The Court had also explicitly tied the Confrontation Clause analysis to hearsay, holding that where a statement is not introduced for the truth of the matter asserted, the Confrontation Clause is not implicated. For example, in <u>Tennessee v. Street</u>, 471 U.S. 409

30

(1985), the Court discerned no constitutional impediment to the admissibility of a sheriff's nonhearsay testimony about the confession of the defendant's accomplice. <u>Id.</u> at 414 ("The <u>nonhearsay</u> aspect of [the] confession — not to prove what happened at the murder scene but to prove what happened when respondent confessed — raises no Confrontation Clause concerns."). Furthermore, the Court stated that "[t]he Clause's fundamental role in protecting the right of cross-examination was satisfied by [the sheriff's] presence on the stand." <u>Id.</u> (citation omitted) (citing <u>Douglas v. Alabama</u>, 380 U.S. 415, 418 (1965)).[9]

The instant case is analogous to <u>Street</u>. Kathy Ann Sullivan's statement was not admitted for the truth of the matter asserted. Therefore, it was not hearsay, and Sullivan had an opportunity to test the reliability of that statement through cross-examination of the investigating officer. Thus, in light of <u>Street</u> and similar cases,[10] which created the standard under which the SJC's decision

_____

[9] This rule survives even after <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), which clarified and strengthened defendants' rights under the Confrontation Clause. As the Court explained in <u>Crawford</u>, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." <u>Id.</u> at 59 n.9 (citing <u>Street</u>, 471 U.S. at 414); <u>see also Williams v. Illinois</u>, 132 S. Ct. 2221, 2227-28 (2012) (where "statement was not admitted for the truth of the matter asserted, . . . it is settled that the Confrontation Clause does not bar the admission of such statements").

[10] <u>See</u>, <u>e.g.</u>, <u>United States v. Inadi</u>, 475 U.S. 387, 398 n.11 (1986) ("[A]dmission of nonhearsay 'raises no Confrontation Clause concerns.' Cross-examination regarding such statements would contribute nothing to Confrontation Clause interests."

is to be reviewed, this court does not find that the SJC's ruling
was "contrary to" or an "unreasonable application" of that body of
law. Accordingly, this part of Sullivan's second ground for relief
must be denied.

b.   <u>Jury Instructions</u>

This component of Sullivan's confrontation claim was first
presented to a state court as part of his Second Motion for a New
Trial, which was denied by Superior Court Judge Kottmyer, and his
motion for leave to appeal this decision to the SJC under §33E,
which was denied by Justice Ireland. <u>See</u> Order Denying Leave to
Appeal. Because this claim was unexhausted at the time of the
instant petition's filing, the court has not previously considered
its merits. Accordingly, it requires the closest analysis of any of
Sullivan's claims.

i.   <u>Procedural Default</u>

Sullivan was required to apply to a Single Justice
"gatekeeper" of the SJC for leave to appeal the lower court's
denial of his Second Motion for a New Trial. <u>See</u> Mass. Gen. Laws
ch. 278, §33E. Section 33E states that where a motion is filed in
the Superior Court after the SJC's decision on the case is final,
"no appeal shall lie from the decision of that court upon such
motion unless the appeal is allowed by a single justice of the
supreme judicial court on the ground that it presents a <u>new and</u>

_____

(citation omitted) (quoting <u>Street</u>, 471 U.S. at 414)).

substantial question which ought to be determined by the full court." Id. (emphasis added). The First Circuit has held that §33E has been applied with sufficient consistency by the SJC to qualify as an "independent and adequate state ground" barring federal habeas review. See Mendes v. Brady, 656 F.3d 126, 128 (1st Cir. 2011); Yeboah-Sefah v. Ficco, 556 F.3d 53, 75 (1st Cir. 2009).

Section 33E "requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal." Yeboah-Sefah, 556 F.3d at 74-75 (quoting Commonwealth v. Ambers, 397 Mass. 705, 707 (1986)) (internal quotation marks omitted). "Issues not raised at trial or pursued in available appellate proceedings are waived." Commonwealth v. Pisa, 384 Mass. 362, 366 (1981). "An issue is not 'new' for the purposes of [§33E] if it could have been addressed at trial or on direct review, had the defendant properly raised it there." Yeboah-Sefah, 556 F.3d at 74. "Where there has been procedural waiver below, the denial of review under §33E is an independent and adequate state ground that bars federal habeas review." Simpson v. Matesanz, 175 F.3d 200, 206 (1st Cir. 1999); see also Yeboah-Sefah, 556 F.3d at 75 ("We hold that the single justice's decision to deny full SJC review of petitioner's claim under §33E is based on a procedural waiver, namely, his failure to raise that claim in prior state proceedings, and therefore, rests

33

on an independent and adequate state ground for decision."); <u>Costa</u> <u>v. Hall</u>, 673 F.3d 16, 23 ("A Single Justice's finding that a petitioner has not raised a 'new-and-substantial' question for further review constitutes a finding of procedural default under state law.").

Here, then, Justice Ireland's decision under §33E means that Sullivan's constitutional claim about the jury instructions is procedurally defaulted, a conclusion strengthened by the fact that Sullivan was requesting leave to appeal from Judge Kottmyer's determination that this claim was procedurally waived. <u>See</u> <u>Simpson</u>, 175 F.3d at 206 ("Where there has been procedural waiver below, the denial of review under §33E is an independent and adequate state ground that bars federal habeas review.").

As indicated earlier, where, as here, "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Costa</u>, 673 F.3d at 25. Therefore, the burden of proof is on Sullivan to establish both cause <u>and</u> prejudice in order to obtain relief from procedural default on this theory. <u>Coleman</u>, 501 U.S. at 750. The Supreme Court

has "expressly rejected [the] contention that a showing of actual prejudice 'should permit relief even in the absence of cause.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982)).

## ii. Cause and Prejudice

In his memoranda, Sullivan does not discuss the issue of procedural default under §33E, but he does make arguments that relate to whether cause and prejudice that might excuse such a default exist. In particular, Sullivan asserts that by failing to raise this issue at trial or on direct appeal, his counsel was unconstitutionally ineffective. See Renewed Memo. in Supp. of Pet. at 13-14. Accordingly, the court is addressing this as an issue of whether the cause of Sullivan's §33E procedural default was ineffective assistance of counsel.

Ineffective assistance of counsel may excuse procedural default of a claim on habeas review, but to be a cognizable excuse, the ineffective assistance claim must itself not be procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000). Here, however, this ineffective assistance claim was raised for the first time in Sullivan's Second Motion for a New Trial, which was itself denied under §33E. Therefore, Sullivan's ineffective assistance claim has been itself been procedurally defaulted and will constitute cause only if there is cause and prejudice for that default.

As the First Circuit explained in <u>Costa</u>:

> [The petitioner] has shown neither cause for nor prejudice from this second level of procedural default. Cause for procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Carrier</u>, 477 U.S. at 488; <u>see also</u> <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984). This could include a showing that "the factual or legal basis for a claim was not reasonably available to counsel," <u>Carrier</u>, 477 U.S. at 488, or that there was "some interference by officials," <u>id.</u> (quoting <u>Brown v. Allen</u>, 344 U.S. 443, 486 (1953)) (internal quotation marks omitted).

<u>Costa</u>, 673 F.3d at 25. Sullivan has not shown that an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule" under §33E. <u>Carrier</u>, 477 U.S. at 488. Accordingly, Sullivan's belated ineffective-assistance claim cannot constitute cause for the procedural default of his claim regarding the jury instructions. Because Sullivan has pointed to no other potential cause for the procedural default, his defaulted claim is not revived by the required showing of cause and prejudice.

As the Supreme Court has held, there is no obligation for a habeas court to consider prejudice in the absence of cause for procedural default. <u>See</u> <u>Carrier</u>, 477 U.S. at 494; <u>Engle</u>, 456 U.S. at 134 n.43. However, some analysis of prejudice here will clarify that there is no injustice arising from the procedural default.

To demonstrate prejudice, a defendant "must shoulder the burden of showing, not merely that the error at his trial created

a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Sullivan has made no such showing. The jury instruction regarding consciousness of guilt did not explicitly direct the jurors to consider Kathy Ann Sullivan's statement, and as the Commonwealth has argued, there were several other pieces of evidence presented to which that instruction was germane. Memo. in Opp. to Renewed Memo. in Supp. at 18. As the First Circuit has explained, such an instruction on consciousness of guilt is not unusual:

> Such an instruction is considered appropriate when the evidence shows an action on the part of the defendant that normally could be viewed as an awareness of guilt, such as flight, a threat to witnesses, or a false statement. The jury is then instructed that it may consider the circumstantial evidence indicating consciousness of guilt, in light of all other evidence in the case, in determining whether the defendant is guilty.

United States v. Littlefield, 840 F.2d 143, 148 (1st Cir. 1998) (footnote omitted).

Sullivan's challenge to this jury instruction derives from his broader argument that evidence of Kathy Ann Sullivan's statement violated his constitutional right of confrontation, which was rejected on appeal by the SJC. As Sullivan argues in his most recent memorandum:

> A jury instruction that permits the jurors to infer guilt from the statements of a third party where he is not given an opportunity to show that the statement was not

<u>made or was otherwise inaccurate</u> deprives the defendant
of his right to confrontation under the Sixth and
Fourteenth Amendments to the United States Constitution.

<u>To the extent that the instruction allowed the jurors to
consider evidence admitted in violation of his
confrontation rights</u>, it so infected the entire trial
that the resulting conviction violated the petitioner's
right to due process.

Renewed Memo. in Supp. of Pet. at 12-13. Because these arguments are
predicated upon a finding that the admission of Kathy's statement
was itself a violation of the Confrontation Clause, however, they
fail for the reasons explained earlier. As the SJC decided, in
accord with Supreme Court precedent, Sullivan had an opportunity to
challenge whether the statement was made or whether it was otherwise
inaccurate through cross-examination of the investigating officer.
Furthermore, because the SJC reasonably determined that the evidence
was <u>not</u> admitted in violation of Sullivan's confrontation rights,
the trial was not "infected" by the instruction.

In the absence of a predicate Confrontation Clause violation,
therefore, Sullivan has not carried his burden of showing that even
if his counsel had presented his constitutional arguments about the
jury instruction to the SJC on direct appeal, he would have been
entitled to some relief. <u>See</u> <u>Souza v. Mendonsa</u>, Civil Action No.
12-10705-DPW, 2013 WL 4517978, at *6 (D. Mass. Aug. 23, 2013)
(Woodlock, J.) ("The simplest explanation for lack of prejudice here
is to observe that even if I reached the merits of the . . . claims,
I would not find a deprivation of [the petitioner]'s constitutional

38

rights."). Accordingly, because Sullivan has shown neither cause for nor prejudice from the default of his jury instruction claim.

### iii. Miscarriage of Justice

Finally, Sullivan has not demonstrated that his procedural default should be excused because of a fundamental miscarriage of justice.

"The cause and prejudice requirement . . . shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Maples, 132 S. Ct. at 927 (alteration in original) (quoting Dretke v. Haley, 541 U.S. 386, 393 (2004)) (internal quotation marks omitted). This balance is struck by permitting federal courts to consider the merits of defaulted claims without a showing of cause and prejudice if the petitioner "demonstrate[s] that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Coleman, 501 U.S. at 750 (quoting Carrier, 477 U.S. at 495).

"To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court has "explicitly tied the miscarriage of justice exception to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995). To establish actual innocence, a petitioner must

"show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Id.</u> at 327 (quoting <u>Carrier</u>, 477 U.S. at 496). This standard of "probability" is satisfied only when the petitioner "demonstrate[s] that, '"in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (quoting <u>Schlup</u>, 513 U.S. at 227-28). Furthermore, "'actual innocence' means <u>factual</u> innocence, not mere legal insufficiency." <u>Id.</u> (emphasis added). If actual innocence is demonstrated, that finding serves not as an independent basis for post-conviction relief, but as a "gateway" which, when proven, allows a habeas court to review the merits of otherwise defaulted claims. <u>See, e.g.</u>, <u>Herrera v. Collins</u>, 506 U.S. 390, 416 (1993); <u>Goldman v. Winn</u>, 565 F. Supp. 2d 200, 222 (D. Mass. 2008).

Sullivan has not argued that he is factually innocent of the crimes of which he was convicted. Nor has he supplemented the record with any evidence that causes the court to conclude that he is factually innocent or that it is likely that no reasonable, fully informed juror would have convicted him. Therefore, he has failed to show that a fundamental miscarriage of justice will occur if this court does not decide the merits of this claim. <u>See</u> <u>Bousley</u>, 523 U.S. at 623.

Because Sullivan has not established a basis on which this court has the authority to decide the merits of the procedurally

defaulted claim, this claim is not a meritorious ground for habeas relief.

> 2. <u>Remaining Grounds: Ineffective Assistance of Counsel and Due Process</u>

As explained earlier, this court previously dismissed Sullivan's first claim, regarding ineffective assistance of counsel for failing to object to evidence of Grace's plea agreement, and his third claim, regarding the untimely disclosure of errors in discovery, in its adoption of Magistrate Judge Alexander's report and recommendation. <u>See</u> Sept. 30, 2001 Order. Following its lifting of the stay, the court wrote that it did "not expect to revisit these conclusions unless petitioner demonstrates newly discovered evidence or a material change in controlling law." May 20, 2010 Order at 2 (citing <u>Ellis v. United States</u>, 313 F.3d 636, 646-48 (1st Cir. 2002)).

As Sullivan concedes, he "cannot offer any newly discovered evidence, nor has there been any material change in controlling law as to these issues." Renewed Memo. in Supp. of Pet. at 1. The court, therefore, declines Sullivan's request to reconsider its earlier conclusions and reaffirms its ruling that these claims are not meritorious.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the court must "issue or deny a certificate of

appealability [("COA")] when it enters a final order adverse to the applicant." To receive a COA, Sullivan must make "a substantial showing of a denial of a constitutional right." <u>See</u> 28 U.S.C. §2253(c)(3). In other words, a petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003).

With regard to Sullivan's ineffective-assistance-of-counsel and due process claims, this court issued a certificate of appealability when it first denied those grounds for relief. <u>See</u> May 16, 2002 Order. The court discerns no reason to reconsider that decision. A certificate of appealability is, therefore, being issued again for those claims.

With regard to Sullivan's Confrontation Clause claim, this court has previously discerned and described some ambiguities in the First Circuit's jurisprudence regarding procedural default under §33E. <u>See</u> <u>Lee v. Corsini</u>, C.A. No. 07–11316–MLW, 2013 WL 6865585, at *11 n.7 (D. Mass. Dec. 24, 2013) (discussing tensions between the

First Circuit's decision in <u>Costa</u>, 673 F.3d 16, and its earlier decision in <u>Phoenix</u>, 189 F.3d 20); <u>see</u> <u>also</u> <u>Souza v. Mendonsa</u>, No. 12-10705-DPW, 2013 WL 4517978, at *5 n.3 (D. Mass Aug. 23, 2013) (Woodlock, J.), <u>aff'd</u>, No. 13-2124 (1st Cir. Jan. 22, 2014). Because the rule of procedural default under §33E is an important component of this court's analysis of Sullivan's Confrontation Clause claim, and because of the ambiguities in the First Circuit's treatment of §33E, this court finds that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893). Therefore, a certificate of appealability is also being issued on Sullivan's Confrontation Clause claim.

V.    ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    The Petition For A Writ of Habeas Corpus (Docket No. 1) is DENIED.

2.    A COA is ISSUED for all claims.


                                    /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE